[743 NYS2d 59]

PARAMOUNT INSURANCE COMPANY, Appellant, v ROSEDALE GARDENS, INC., et al., Respondents.

ROSEDALE GARDENS, INC., Third-Party Plaintiff, v ARCO GOLD MANAGEMENT CO., INC., Third-Party Defendant-Respondent.

First Department, April 30, 2002

236

### APPEARANCES OF COUNSEL

*Stuart M. Herz,* Garden City, for appellant.

*Kenneth M. Dalton* of counsel, New York City (*Daly Dalton & Schermerhorn, P.C.,* attorneys), for Rosedale Gardens, Inc., respondent.

*Andrew Zajac* of counsel, New York City (*Fiedelman & McGaw* and *Jacobowitz, Garfinkel & Lesman,* attorneys), for third-party defendant-respondent.

### OPINION OF THE COURT

SULLIVAN, J.

In this action testing the validity of a disclaimer of coverage based on late notice of claim, Paramount Insurance Company, which insured defendant Rosedale Gardens, Inc. under a general liability policy and an umbrella policy for negligence claims arising out of Rosedale's ownership, operation and control of a residential building at 1810 Bruckner Boulevard in the Bronx, appeals from the denial of its motion for summary judgment for a declaration in its favor.

It is undisputed that no notice was given to Paramount until the commencement of a lawsuit against Rosedale for personal injuries sustained in the accident giving rise to the claim,

which had occurred more than seven months earlier. The notice provisions in the primary and umbrella policies are essentially identical. The primary policy provides, "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Although not defined in the primary policy, "occurrence" was defined in the umbrella policy as, "With respect to bodily injury * * *, an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Rosedale is a residential cooperative corporation, and Arco Gold Management Co., Inc., impleaded by Rosedale as a third-party defendant, was, at all relevant times, its managing agent. Jose and Miriam Escobar, husband and wife and residents of Rosedale Gardens, are also named defendants. They are also the plaintiffs in the underlying personal injury action, which arises out of Mr. Escobar's slip and fall down a third-floor stairway at the premises on the afternoon of May 16, 1999.

After the fall, Mrs. Escobar summoned an ambulance, which transported Mr. Escobar to the hospital, where he was diagnosed with an ankle fracture, admitted and kept for six days. Mr. Escobar was released from the hospital with a cast on his leg and with a walking device. Later, on the same day as the accident, Mrs. Escobar called Rosedale's emergency number and reported the accident. Thereafter, she spoke with Rosedale's superintendent, Kungel Persaud, and advised him that Mr. Escobar "had tripped and fell down the stairs" and had been taken by ambulance to the hospital. Mrs. Escobar showed Persaud the stairway where Mr. Escobar had tripped and fallen. Although Mrs. Escobar had observed sunflower seeds when she first saw the stairway after Mr. Escobar's fall, the seeds were not there when she showed Persaud the site of the fall; nor did she tell Persaud about the seeds. At various times after his discharge from the hospital, Mr. Escobar, in a cast and using his walking device, would meet Persaud on his way to a doctor's appointment.

On May 17, 1999, Persaud, as he was required to do, notified Arnold Cohen, Arco's site manager at Rosedale Gardens, of the accident. According to Persaud, he advised Cohen that Mr. Escobar had been taken by ambulance from the scene. Cohen has confirmed that on May 17, 1999 Persaud notified him of the accident and, in two signed statements taken prior to his deposition, admitted that he had been advised that an ambulance had been called. In his deposition taken on January 23, 2001, however, Cohen denied ever being informed that an ambulance had been called.

Cohen testified that it was company policy that if an accident occurred within the building he would investigate and determine whether the insurance broker should be notified. In the instant case, notice was not given because after Cohen spoke with the superintendent and examined the staircase, he "didn't see or hear any further substantiation of anything having occurred." Moreover, Cohen testified that in 1998, the Escobars had made unsubstantiated complaints that their child had been the victim of lead poisoning. Thus, he explained, he had reason to doubt the validity of the Escobars' claims, particularly since, after the accident, the possibility of a lawsuit was never raised.

Almost seven months later, by a summons and complaint dated December 1, 1999, the Escobars commenced an action to recover damages for Mr. Escobar's personal injuries and Mrs. Escobar's loss of services. Rosedale forwarded the summons and complaint to its insurance broker, which, in turn, forwarded them to Paramount with a request for a defense and indemnification under the policies. Paramount's receipt of process on January 3, 2000 constituted its first notice of the claim. It thereafter conducted an independent investigation by an outside agency, which included obtaining a signed, written statement from Cohen acknowledging that he knew of the slip and fall on May 17, 1999 and that he forgot to report the incident to the insurance broker. As a result, by letter of February 1, 2000, Paramount disclaimed coverage on the basis of lack of timely notice, advising Rosedale that it would commence a declaratory judgment action, which it did on February 4, 2000, naming Rosedale and the Escobars as defendants, to determine the rights and obligations of the parties under the policies. As noted, Rosedale commenced a third-party action against Arco, alleging that if Paramount were successful in its assertion of late notice as a bar to a defense and indemnification under the policies, the cause of such breach of policy conditions would have been Arco's failure to give timely notice of the accident to Paramount.

After discovery, Paramount moved for summary judgment, arguing that the 7½ month delay in notifying it of the accident constituted untimely notice as a matter of law. In opposition, Rosedale argued that a factual issue existed, citing Cohen's deposition testimony that he did not believe that the Escobars would commence a lawsuit or that the accident, if indeed it occurred, presented a liability situation, given that, on his post-accident inspection, he apparently found no defect or danger-

ous condition. The motion court denied Paramount's motion, finding "very pronounced issues of fact" with respect to whether the belief, undoubtedly that of Arco, acting for Rosedale, that the Escobars would not sue, was reasonable.

Following the denial of summary judgment, Rosedale moved pursuant to CPLR 510 (3) to change the venue of this action from New York to Bronx County, where the Escobar action is pending, arguing that "the ends of justice would be best promoted by both matters being resolved in the same court." Paramount opposed the motion, arguing that the adjudication of the coverage question would have no bearing on the resolution of the Escobars' negligence action. The motion court granted the change of venue and directed that the declaratory judgment action and the Escobar personal injury action be tried jointly, holding that "the facts in the underlying action will affect the determination as to whether or not there is coverage * * * or whether [Paramount] should be entitled to disclaim coverage." The court justified its order directing a joint trial with the observation "that's the whole reason it is being sent there, otherwise it would be a ridiculous thing to send it there and not have it consolidated with the other case." Paramount has taken an appeal from the denial of summary judgment in its favor and the change of venue. We reverse both orders.

█ It is well settled that compliance with an insurance policy notice provision operates as a condition precedent to coverage. (*White v City of New York*, 81 NY2d 955, 957; *Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 440.) Absent a showing of legal justification, the failure to comply with the notice condition vitiates coverage. (*Matter of Allcity Ins. Co. [Jimenez]*, 78 NY2d 1054, 1055.) The obligation to give notice "as soon as practicable" of an occurrence that may result in a claim is measured by the yardstick of reasonableness. (*875 Forest Ave. Corp. v Aetna Cas. & Sur. Co.*, 37 AD2d 11, 12, *affd* 30 NY2d 726.) It has generally been held that a failure to give notice may be excused when an insured, acting as a reasonable and prudent person, believes that he is not liable for the accident. (*Id.* at 12-13.) It is clear from this principle that, in assessing the timeliness of the notice given, the courts have not turned over to the insured, or its agents, the exclusive responsibility for determinating when an accident is likely to give rise to a liability claim.

The duty to give notice arises when, from the information available relative to the accident, an insured could glean a rea-

sonable possibility of the policy's involvement. (*See, Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, *supra*, 31 NY2d at 441-443; *Haas Tobacco Co. v American Fid. Co.*, 226 NY 343, 346-347; *Woolverton v Fidelity & Cas. Co.*, 190 NY 41, 48.) Moreover, knowledge of an occurrence obtained by an agent charged with the duty to report such matters is imputed to the principal. (*See, White v City of New York, supra*, 81 NY2d at 958.) It also bears noting that the insured bears the burden of proving, under all the circumstances, the reasonableness of any delay in the giving of notice. (*See, Argentina v Otsego Mut. Fire Ins. Co.*, 86 NY2d 748, 749-750.)

Rosedale argues that notice of the accident was not required because Arnold Cohen, the site manager, reasonably believed that Rosedale would not be liable to the Escobars. This precise argument was rejected in *Heydt Contr. Corp. v American Home Assur. Co.* (146 AD2d 497, 499, *lv dismissed* 74 NY2d 651 [in light of policy requirement of notice whenever claim may arise, "that a particular occurrence may not in the end result in a ripened claim does not relieve the insured from advising the carrier of that event"]). In *Christiania Gen. Ins. Corp. v Great Am. Ins. Co.* (979 F2d 268, 276), the Second Circuit held that a provision requiring notice when it "appears likely" that a claim will or may involve a policy—a less onerous notice requirement than is involved here—"does not require a probability—much less a certainty—that the policy at issue will be involved." The court held that a reasonable possibility—such that "may exist even though there are some factors that tend to suggest the opposite"—of the policy's involvement is sufficient to trigger the duty. (*Id.; see, State of New York v Blank*, 27 F3d 783, 794 [2d Cir] [insurance policy notice requirements strictly enforced].)

Similarly here, the requirement of prompt notice of any occurrence that "may result in a claim" should not be interpreted in a way that the insurer is compelled to relinquish its right to prompt notice and all the benefits that accrue therefrom—a timely investigation and the opportunity, if appropriate, to dispose of the claim in its early stages, an opportunity that might be irretrievably lost in the case of delayed notice—by placing undue emphasis on the liability assessment of one not trained or even knowledgeable in such matters.

The point is aptly illustrated in this case. Both Messrs. Persaud and Cohen observed the stairway where the accident occurred sometime after its happening. That the condition complained of as the cause of the fall, i.e., the presence of sunflower seeds on the stairway, a highly transient condition,

was not present at the time of their respective inspections, one of which could not have taken place, at the earliest, until a day after the accident, is hardly surprising and of little or no overall significance in any assessment of the likelihood of a claim. The other factor cited, that the Escobars had a year earlier asserted an allegedly meritless claim of lead poisoning, never pursued, does not even logically support the decision to forego notice. To the prudent insured, it would seem that this circumstance should have had the opposite effect. In any event, suffice it to say, the notice requirement does not exempt occurrences, which, in the insured's estimation, do not portend probable liability on its part, as Rosedale's argument seems to suggest.

While an insurer need not show prejudice to sustain a coverage disclaimer on the basis of late notice, here, Paramount is able to make such a showing. Mr. Escobar has testified that he hired an attorney only after he failed to hear from any Rosedale representative after the accident. Thus, the delay in notice had a clear impact on Paramount's ability to investigate and dispose of the claim at an early stage. This lost opportunity, not easily quantifiable, is, no doubt, a factor in the rationale that underlies the strict enforcement of the notice condition in liability insurance policies.

In the instant matter, it is beyond dispute that Persaud, on May 16, 1999, knew of the accident and that Mr. Escobar had been taken by ambulance to the hospital. The latter circumstance is a significant factor in determining the reasonableness of any delay in giving notice. (*See, e.g., Zadrima v PSM Ins. Cos.*, 208 AD2d 529, 530, *lv denied* 85 NY2d 807 [four month delay in notifying insurer of accident inexcusable as matter of law where insured knew that injured party was transported to hospital by ambulance after accident].) According to Mr. Escobar, Persaud learned shortly after his return from the hospital one week after the accident that Escobar's leg was in a cast and that he required a walking device. Unlike the situation in *Nalea Realty Corp. v Public Serv. Mut. Ins. Co.* (238 AD2d 252, *lv dismissed* 90 NY2d 927), Persaud's agency obligations included the handling of such information.

Nor was Rosedale's duty to report the accident to Paramount discharged by Persaud's notification to Cohen of Arco, Rosedale's managing agent. Whatever may have been the arrangement between Rosedale and Arco as respects the reporting of such incidents, it is not binding on Paramount, which, pursuant to the policy's terms, was entitled to notice "as soon

as practicable" from the insured or anyone acting for it. In that regard, Cohen, as he admits, knew of the accident the day after it occurred. And, despite a postlitigation assertion to the contrary, in written statements given after the accident he admitted knowing that Mr. Escobar was taken from the scene by ambulance to the hospital. In any event, as far as Rosedale's obligation to give notice is concerned, it is Persaud's knowledge that is determinative and on that issue there is no dispute. None of the extenuating circumstances that have led the courts to conclude that the insured acted reasonably in believing that liability would not result are present here. (*See, e.g., Argentina v Otsego Mut. Fire Ins. Co., supra,* 86 NY2d 748 [close familial relationship between accident victim and insured and lack of knowledge of permanent injury]; *D'Aloia v Travelers Ins. Co.,* 85 NY2d 825 [injured party's parents declined the insured's offer to pay medical expenses]; *Merchants Mut. Ins. Co. v Hoffman,* 56 NY2d 799 [action by foster child against foster parents after former reached majority where child's medical bills had been paid by Department of Social Services].) Since Rosedale, through its own superintendent and its on-site managing agent, had immediate notice of the Escobar accident and injury and failed to report the accident promptly to Paramount, it has failed to comply with a condition to coverage, which justifies the disclaimer.

The resolution of the coverage issue in Paramount's favor renders largely academic the motion court's grant of a change of venue and direction of a joint trial, which was erroneous as a matter of law even had the summary judgment motion been correctly decided. Contrary to the motion court's preference for the joint disposition of coverage and liability issues, disparate issues to be sure, "[i]t is generally recognized that, even where common facts exist, it is prejudicial to insurers 'to have the issue of insurance coverage tried before the jury that considers the underlying liability claims' " (*Medick v Millers Livestock Mkt.,* 248 AD2d 864, 865, quoting *Schorr Bros. Dev. Corp. v Continental Ins. Co.,* 174 AD2d 722; *see, Kelly v Yannotti,* 4 NY2d 603).

Moreover, although the ruling had its basis in the court's notions of practicality and expedience, it was premised, legally, on CPLR 510 (3), which allows for a change of venue when "the convenience of material witnesses and the ends of justice will be promoted by the change." In its moving papers, Rosedale was unable to identify a single witness, much less a material witness, who was unavailable to testify in New York County,

as opposed to Bronx County. Nor was any information furnished to elucidate counsel's statement in support of the motion that the ends of justice would be promoted by a change of venue.

Accordingly, the order of Supreme Court, New York County (Barbara Kapnick, J.), entered October 2, 2001, which, to the extent appealed from, denied plaintiff's motion for summary judgment, should be reversed, on the law, without costs or disbursements, the motion granted and a declaration made that plaintiff has no obligation to defend or to indemnify defendant Rosedale Gardens, Inc. against the claim asserted by the defendants Escobar in the underlying action pending in Supreme Court, Bronx County. The order of the same court and Justice, entered November 1, 2000, which, inter alia, granted the motion of defendant Rosedale Gardens, Inc. for a change of venue, should be reversed, on the law, the facts and in the exercise of discretion, without costs or disbursements, and the motion denied.

ANDRIAS, J.P., BUCKLEY, ELLERIN and LERNER, JJ., concur.

Order, Supreme Court, New York County, entered October 2, 2001, reversed, on the law, without costs or disbursements, plaintiff's motion for summary judgment granted and a declaration made that plaintiff has no obligation to defend or to indemnify defendant Rosedale Gardens, Inc. against the claim asserted by the defendants Escobar in the underlying action pending in the Supreme Court, Bronx County, and, order, same court, entered November 1, 2000, reversed, on the law, the facts and in the exercise of discretion, without costs or disbursements, and the motion for a change of venue denied.