■ GREAT CANAL REALTY CORP., Respondent, v SENECA INSURANCE COMPANY, INC., Appellant. [787 NYS2d 22]—

Order, Supreme Court, New York County (Debra A. James, J.), entered January 7, 2004, which denied defendant's motion for summary judgment dismissing the complaint, affirmed, without costs.

Ellerin and Catterson, JJ., concur in a memorandum by Catterson, J., as follows: In this declaratory judgment action, the Court is confronted with the validity of the no-prejudice exception in New York whereby an insurer can disclaim coverage without demonstrating prejudice when its disclaimer is based on late notice of an occurrence.

The underlying action in this case involves an accident that occurred on May 7, 2002. Song Thor Chong sustained injuries when he fell from a ladder during the course of renovation work on property owned by plaintiff, Great Canal Realty Corp. (hereinafter referred to as Great Canal). Great Canal's president, Ms. Dunnie Lai, was informed about the accident a few weeks later by Norman Law, foreman of the general contractor, Welldone Enterprises, which was hired by Great Canal to perform the renovations. Law told Ms. Lai that Chong, an employee of an air conditioning subcontractor, had fallen from a ladder in the course of his work. Law additionally told her that

the problem would be taken care of under Welldone's insurance which covered Great Canal as an additional insured.

On or about August 14, 2002, Chong commenced an action against Great Canal alleging violations of Labor Law §§ 200, 240 and 241, seeking $5 million in damages for his injuries. Great Canal was served with the summons and complaint in that action approximately four months after the accident, in September 2002. Ms. Lai notified Great Canal's insurance carrier, Seneca Insurance Company (hereinafter referred to as Seneca) of the lawsuit on September 10, 2002. Seneca disclaimed coverage on the basis of late notice. The primary commercial liability insurance policy which covered Great Canal for the period from January 20, 2002 to January 30, 2003 provided, in part: "you must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim."[1]

On or about January 6, 2003, Great Canal commenced this declaratory judgment action seeking a declaration that Seneca is required to defend and indemnify Great Canal. Great Canal also sought recovery of defense and indemnity costs arising out of Seneca's disclaimer of coverage. Subsequently, Seneca moved for summary judgment on the grounds that Great Canal, through Ms. Lai, was aware of the occurrence for four months before it notified the insurer. Seneca contended that Great Canal therefore failed to give timely notice, a condition precedent to coverage under the policy. Great Canal, in opposition, argued that it had notified Seneca promptly on receipt of the summons and complaint, but had not notified Seneca earlier because of its belief that workers' compensation was the sole and exclusive remedy available to the injured party, and such compensation was available through the general contractor's insurance policy. In addition, Great Canal argued that its belief of nonliability was reasonable since Ms. Lai did not know much more than the basic fact of the accident, and had no knowledge of how the accident happened, or the nature of the injury. The trial court denied Seneca's motion, holding that triable issues of fact exist as to whether Great Canal had a valid excuse for the delay in notice, given the information provided to Ms. Lai.

We would affirm the denial of summary judgment but for the reasons set forth below.

---

**1.** Seneca also issued Great Canal an umbrella insurance policy for the same period, which was excess to the primary policy and provided: "When an occurrence takes place which is reasonably likely to involve the insurance afforded hereunder written notice shall be given by the insured . . . as soon as practicable."

In 1921, Judge Cardozo authored the landmark contract law decision of *Jacob & Youngs, Inc. v Kent* (230 NY 239 [1921]). In that case, Cardozo discussed the measure of damages for a trivial breach of a contract term. The overriding import of his prose guides our decision today: "There will be no assumption of a purpose to visit venial faults with oppressive retribution." (230 NY at 242). Cardozo went on to hold that: "Those who think more of symmetry and logic in the development of legal rules than of practical adaptation to the attainment of a just result will be troubled by a classification where the lines of division are so wavering and blurred. Something, doubtless, may be said on the score of consistency and certainty in favor of a stricter standard. The courts have balanced such considerations against those of equity and fairness, and found the latter to be the weightier. The decisions in this state commit us to the liberal view, which is making its way, nowadays, in jurisdictions slow to welcome it. (*Dakin & Co. v. Lee*, 1916, 1 K. B. 566, 579)."[2] (*Id.* at 242-243.)

This Court recognizes that contrary to the Court of Appeals' philosophy in *Jacob & Youngs*, it is now the well-settled law in New York that where an insurance policy requires an insured to provide notice "as soon as practicable" after an occurrence, such notice must be provided within a reasonable time under all the facts and circumstances of each case. (*Heydt Contr. Corp. v American Home Assur. Co.*, 146 AD2d 497, 498 [1st Dept 1989], *lv dismissed* 74 NY2d 651 [1989], citing *Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 441 [1972].) The insured's delay or failure to give timely notice may be excused where the insured had a reasonable belief that it would not be liable for the accident. (*Paramount Ins. Co. v Rosedale Gardens, Inc.*, 293 AD2d 235, 239 [1st Dept 2002], citing *875 Forest Ave. Corp. v Aetna Cas. & Sur. Co.*, 37 AD2d 11, 12 [1st Dept 1971], *affd* 30 NY2d 726 [1972].) At issue is not whether an insured believes that he will ultimately be found liable for the injury but whether he has a reasonable basis for a belief that no claim will be asserted against him. (*SSBSS Realty v Public Serv. Mut. Ins. Co.*, 253 AD2d 583, 584 [1st Dept 1998], citing *White v City of New York*, 81 NY2d 955, 957 [1993].) It is generally held that questions as to whether there exists a good-faith belief that an injured party will not seek to hold the insured liable and

---

2. It is the height of irony that Cardozo characterized his standard of "equity and fairness" as the "liberal view" embraced by the courts of New York in 1921, when, as shown below, the courts of New York have consistently worked to erode those pronouncements in the ensuing 80 years of precedent involving insurance contracts.

whether the belief is reasonable under the circumstances are questions of fact reserved for the factfinder. (*Argentina v Otsego Mut. Fire Ins. Co.*, 86 NY2d 748, 750 [1995].) Absent a valid excuse, however, such a failure to notify the insurer vitiates the policy and the insurer need not show prejudice before it can assert the defense of noncompliance. (*Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 440 [1972].)

On appeal, Seneca argues that, as a matter of law, Great Canal's belief was unreasonable because the very reasons given for the belief have been rejected by this Court, and so are not a legally cognizable excuse. (*See Heydt v American Home Assur.*, 146 AD2d at 499 [plaintiff's assumption that others will bear ultimate responsibility for its loss is insufficient as a matter of law]; *see also Paramount v Rosedale Gardens, Inc.*, 293 AD2d at 240 [insurer should not give up advantages of prompt notice when liability assessment is made by one not trained, or even knowledgeable in such matter, etc.].) Nevertheless, whether an insured has a reasonable basis for his or her belief as to whether a claim may arise, and therefore whether he or she has a duty to give prompt notice to the insurer of the occurrence, are questions which are particularly fact sensitive. Indeed, New York courts have wrestled with the question in numerous decisions. At one end of the spectrum is the view that "[i]n today's litigious society, it seems that a lawsuit is reasonably foreseeable whenever an injury occurs." (*Vradenburg v Prudential Prop. & Cas. Ins. Co.*, 212 AD2d 913, 914 [3d Dept 1995].) At the other end, is the view of this Court in *Kelly v Nationwide Mut. Ins. Co.* that " 'not every trivial mishap . . . [requires] notice [to] be given immediately to the insurance company, even though it may prove afterwards to result in serious injury.' " (174 AD2d 481, 483 [1st Dept 1991].)

It is clear that under the current state of the law, Great Canal, as the insured, has the burden of proving that it had a valid excuse for the delay in notifying its insurance carrier. In those jurisdictions that adhere to what is commonly known as the "prejudice standard" the insurer, generally, must show that the notice provision was breached, and that the insurer was prejudiced by the breach. (*Id.*)

The Court of Appeals has recognized that New York's "no-prejudice" standard is an exception to the well-established principle of general contract law that a nonbreaching party must show that a breach was material, or that it was prejudiced by the breach, before being relieved of its obligations to perform under a contract. (*Matter of Brandon [Nationwide Mut. Ins. Co.]*, 97 NY2d 491, 496 [2002] [Kaye, Ch. J.], citing *Unigard*

*Sec. Ins. Co., Inc. v North Riv. Ins. Co.*, 79 NY2d 576, 581 [1992].) In adhering to the "no-prejudice" exception, New York now finds itself in the minority of jurisdictions justifying their positions by holding that the right to timely notice is fundamental because of the insurer's need "to protect itself from fraud by investigating claims soon after the underlying events; to set reserves; and to take an active, early role in settlement discussions." (*Matter of Brandon [Nationwide Mut. Ins. Co.]*, 97 NY2d at 496.) In other words, the insurer has been granted, wholly through judicial largess, the benefit of a conclusive presumption of prejudice. Almost three decades ago, Pennsylvania's intermediate appellate court departed from precedent and ruled that the presumption of prejudice may be overcome by the claimant. The court observed that: "[A]rguably unconscionable results may arise in the situation where the passage of time (between injury and notice) creates a conclusive presumption of prejudice to relieve the insurer from liability." (*Brakeman v Potomac Ins. Co.*, 236 Pa Super 320, 325, 344 A2d 555, 557 [1975], *affd* 472 Pa 66, 371 A2d 193 [1977].)

Our concern in the instant case, where the time lapse between injury and notice was just four months, prompts us to examine the inequities inherent in granting insurers the benefit of a conclusive presumption of prejudice in derogation of fundamental principles of the law of contracts. Initially, we need not look much further than the antipathy demonstrated by the Court of Appeals in characterizing the "no-prejudice" exception as one that "allow[s] insurers to avoid their obligations to premium-paying clients." (*Matter of Brandon [Nationwide Mut. Ins. Co.]*, 97 NY2d at 496.) In particular, the *Brandon* court appeared to applaud two jurisdictions, Colorado and Tennessee, that had recently moved to a prejudice standard after acknowledging that the true inequity of a presumption of prejudice lies in the "severity of forfeiting one's insurance benefits based on the technical violation of a notice provision." (*Clementi v Nationwide Mut. Fire Ins. Co.*, 16 P3d 223, 230 [Colo 2001], quoting *Brakeman v Potomac Ins. Co.*, 472 Pa at 76, 371 A2d at 198 ["(a)llowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable"].)

In acknowledging the draconian character of forfeiture, jurisdictions moving to a prejudice standard have generally agreed that the condition of timely notice should not "be given a greater scope than required to fulfill its purpose." (*Great Am.*

*Ins. Co. v C. G. Tate Constr. Co.*, 303 NC 387, 396, 279 SE2d 769, 774 [1981].) In other words, since notice requirements are designed to protect the insurer from prejudice, "[i]n the absence of prejudice, regardless of the reasons for the delayed notice, there is no justification for excusing the insurer from its obligations." (*Weaver Bros., Inc. v Chappel*, 684 P2d 123, 125 [Alaska 1984]; *see also Miller v Marcantel*, 221 So 2d 557, 559 [La App 1969] ["(t)he function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch"]; *Cooperative Fire Ins. Assn. of Vt. v White Caps, Inc.*, 166 Vt 355, 362, 694 A2d 34, 38 [1997] ["where a late notice does not harm the insurer's interests, . . . forfeiture . . . [is] invidious [and] . . . damaging to both an unwary insured and an innocent injured" (citation omitted)].)

In the case at bar, Great Canal was paying more than $25,000 annually in premiums for both Seneca policies. There was no suggestion at the time of the disclaimer that the premiums had not been paid. Seneca stated that the reason for disclaiming coverage was the failure to give timely notice of the accident which "constitutes a breach of the terms of the policy, and thus relieves the insurer of its duties under the policy." Seneca did not explain why it deemed the four-month period between the occurrence and notice of the lawsuit untimely. Indeed, since in this jurisdiction the insurer does not need to show prejudice, any lapse whatsoever may be deemed untimely and thus a breach of the notice provision. To adopt a currently much-quoted phrase, Seneca may well have disclaimed coverage just "because it could." Such inequitable arbitrariness is particularly evident in a handful of cases where insurers have disclaimed coverage, and courts in New York have upheld the disclaimers, for delays defined in terms of days rather than months. (*Haas Tobacco Co. v American Fid. Co.*, 226 NY 343 [1919] [insurer was notified 10 days after accident]; *see also Gullo v Commercial Cas. Ins. Co.*, 226 App Div 429 [4th Dept 1929] [disclaimer upheld when notice given 13 days after occurrence]; *Power Auth. v Westinghouse Elec. Corp.*, 117 AD2d 336 [1st Dept 1986] [notice given 53 days after occurrence, and disclaimer upheld].)[3]

The dissent urges strict adherence to precedent. Cardozo once observed that, "[T]he power of precedent, when analyzed, is the

---

3. The arbitrariness is further underscored by the notice one insurer distributes to its claims managers advising them to use their discretion and waive notices which are late by six months to a year "if there is no prejudice." (Eugene R. Anderson, Richard G. Tuttle, Susannah Crego, *Draconian Forfeitures of Insurance: Commonplace, Indefensible, and Unnecessary*, 65 Fordham L Rev 825, 841 [1996].)

power of the beaten track." (Cardozo, The Growth of the Law, at 62 [1924].) Cardozo went on to point out that when there appears to be competing precedent, "A choice must be made. In order that it may be made intelligently, two things must be known. Given a problem whether the directive force of a principle or a rule or a precedent is to be exerted along this path or along that, we must know how the principle or the rule or the precedent is functioning, and what is the end which ought to be attained." (*Id.* at 80.) In the instant case, the precedent of discounting trivial breaches of contract runs afoul of the precedent protecting the freedom of contract for the insurance interests throughout the state.

We are aware that there is a historical reluctance in this jurisdiction to "inhibit freedom of contract by finding insurance policy clauses violative of public policy." (*Slayko v Security Mut. Ins.*, 98 NY2d 289, 295 [2002].) Nevertheless, the time has come for this Court to look at "the end which ought to be attained" and acknowledge that freedom of contract is a fiction when applied to insurance policies. In the words of the *Brakeman* court, "[a]n insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can 'bargain' is the monetary amount of coverage." (*Brakeman v Potomac Ins. Co.*, 472 Pa at 72, 371 A2d at 196.) Additionally, the court noted that "an insured is not able to choose among a variety of insurance policies materially different with respect to notice requirements." (472 Pa at 73, 371 A2d at 196.) More recently, Kentucky's Supreme Court characterized standard form insurance policies as contracts of adhesion because "they are not negotiated; [but] are offered to the insurance consumer on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain." (*Jones v Bituminous Cas. Corp.*, 821 SW2d 798, 801 [Ky 1991].) In its analysis, the Court concluded that since insurance policies are contracts of adhesion, " '[i]f the contract language is ambiguous, it must be liberally construed . . . in favor of the insured.' " (*Id.* at 802, quoting *Wolford v Wolford*, 662 SW2d 835, 838 [Ky 1984].)

In interpreting notice provisions to require automatic forfeiture in the event of noncompliance, New York law ignores that precept. In the instant case, Great Canal's policy stated: "You must see to it that we are notified as soon as practicable of an occurrence . . . which may result in a claim." But there is no guidance as to the parameters of "as soon as practicable." Nor is there any specific mention that failure to comply with this

provision will mean automatic forfeiture. Thus, the "no-prejudice" exception additionally violates the established principle of contract law that "contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." (*Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d at 581; *see Jones v Bituminous Cas. Corp.*, 821 SW2d at 802 ["(w)hile recognizing that the policy language clearly imposes a duty on the insured to promptly notify the company, by failing to define prompt notice or to warn of forfeiture, this result falls beyond the reasonable expectations of the ordinary insurance consumer"].)

In the absence of a definition from insurers, the Court of Appeals in 1979 concluded that the phrase "as soon as practicable" is an elastic one, and that "soon" is expressly qualified by the word "practicable." (*Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 19 [1979].) In holding that a delay in notice of 7½ months fell within the parameters of the phrase, the Court observed that, among other facts "[t]here [was] nothing to indicate that [the insured] had a motive for not complying [with the notice provision]." (47 NY2d at 20.) This Court, too, has concluded in a number of cases that seemingly lengthy delays between injury and notice to the insurer may nevertheless be notice "as soon as practicable." Thus, insurers have been ordered to indemnify the insured in situations where notice was given as long as three years after an accident with the owner's machinery. (*Greater N.Y. Mut. Ins. Co. v I. Kalfus Co., Inc.*, 45 AD2d 574 [1st Dept 1974], *affd* 37 NY2d 820 [1975]; *see also 875 Forest Ave. Corp. v Aetna Cas. & Sur. Co.*, 37 AD2d 11 [1st Dept 1971], *affd* 30 NY2d 726 [1972] [disclaimer invalid although notice given 14 months after a fatal fall from an apartment window]; *Kelly v Nationwide Mut. Ins. Co.*, 174 AD2d 4814 [1st Dept 1991] [disclaimer invalidated for insured who reported an accident nearly one year later].)

Setting aside the confusion that is produced by decisions disparate enough to hold that a delay of 10 days is untimely but a delay of three years is not, there is a more interesting observation to be made about lengthy delays which are adjudicated as "prompt" or "as soon as practicable." The only possible explanation is that jurists and juries alike will go to great lengths to find extenuating circumstances or, in New York, a valid excuse for alleged delays because of the abhorrence of the law for forfeitures. (*Brakeman v Potomac Ins. Co.*, 236 Pa Super at 329, 330, 344 A2d 559-560 [Cercone, J., concurring].) Indeed, the Court of Appeals has demonstrated its aversion for forfei-

ture of coverage by carefully scrutinizing the application of the "no-prejudice" exception. For example, by holding that insurers must demonstrate prejudice before disclaiming for late notice of legal action, the *Brandon* court made very clear that the "no-prejudice" exception is to be applied narrowly and only in circumstances which support its raison d'etre. (*Matter of Brandon [Nationwide Mut. Ins. Co.]*, 97 NY2d at 497; *see also Unigard Sec. Ins. Co., Inc. v North Riv. Ins. Co.*, 79 NY2d 576 [1992] ["no-prejudice" exception does not apply in the reinsurance context].)

While the *Brandon* court was not dealing with the precise issue before us, its rationale in concluding that the no-prejudice exception should not apply to disclaimers of late service of legal papers militates equally toward moving to a "prejudice" standard as to the initial notice requirements. The Court noted the three public policy concerns that are implicated: the adhesive nature of insurance contracts, the public policy objective of compensating tort victims, and the inequity of the insurer's receiving a windfall due to a technicality. (*Matter of Brandon [Nationwide Mut. Ins. Co.]*, 97 NY2d at 496 n 3.) Thus, the *Brandon* decision is the clearest signal yet of the Court's acknowledgment of the soundness of the principle followed by the majority of other states, namely, that the egregious imbalance between insurer and insured needs to be corrected. It would appear that the time has come for New York, too, to adopt that principle in furtherance of the foregoing positive public policy goals.

More than a century ago, Oliver Wendell Holmes described the evolutionary nature of the common law: "The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed. The law embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics. In order to know what it is, we must know what it has been, and what it tends to become." (Holmes, The Common Law, at 1, lecture I [Little Brown and Co. 1923 ed].)

Ultimately, we see no reason to extend the "no-prejudice" exception to allow insurers to disclaim coverage on the basis of late notice of claim where "lateness" is an arbitrary temporal standard applied to a lapse between occurrence and notice, and where contractual rights favor just one party, the insurer. In

any event, in jurisdictions which have struck down the no-prejudice exception the insurer may still prevail by demonstrating it was prejudiced by the late notice.[4]

Thus, we would affirm denial of summary judgment on the ground that a triable issue of fact exists as to whether Seneca was prejudiced by Great Canal's notice four months after the date of the injury in the underlying action.

Lerner, J., concurs in a separate memorandum as follows: I concur in affirming the order of the IAS court only to the extent of finding the existence of triable issues of fact as to whether plaintiff's delay in notifying defendant of Song Thor Chong's underlying claim was timely under the circumstances and whether plaintiff demonstrated the existence of a reasonable and good-faith belief in its nonliability (*see Genova v Regal Mar. Indus.*, 309 AD2d 733 [2003]).

On May 7, 2002, Chong fell from a ladder in the course of a renovation project at the premises owned by plaintiff. At the time of the incident, Chong was working as an employee of an air conditioning subcontractor retained by the project's general contractor, Welldone Enterprises. Dunnie Lai, plaintiff's president, stated that she had no personal knowledge of the incident, but was notified of it a few days later by Welldone's foreman, who informed her that one of its subcontractor's employees had fallen and the "problem" would be resolved through Welldone's insurance company. Accordingly, Lai did not report the incident to defendants believing that Welldone, not plaintiff, would bear ultimate liability for Chong's claim. Upon receipt of a summons and complaint in Chong's personal injury action against plaintiff, however, Lai immediately notified defendant of the underlying claim on September 10, 2002, approximately four months after the incident. Defendant subsequently declined coverage, claiming untimely notice.

It is well settled that where an insurance policy requires an insured to provide immediate or prompt notice of an occurrence, such notice must be provided within a reasonable time under all the facts and circumstances of the case (*see Argentina v Otsego Mut. Fire Ins. Co.*, 86 NY2d 748 [1995]; *Paramount*

---

4. The issue of whether the burden should be on the insurer to show prejudice or as in some jurisdictions on the claimant to show the insurer has suffered no prejudice need not be reached in view of the fact that the *Brandon* court has already indicated its preference for placing "the burden of proving prejudice on the insurer because it has the relevant information about its own claims-handling procedures and because the alternative approach would saddle the policyholder with the task of proving a negative." (*Matter of Brandon [Nationwide Mut. Ins. Co.]*, 97 NY2d at 498.)

*Ins. Co. v Rosedale Gardens*, 293 AD2d 235, 239-240 [2002]). The insured's failure to give timely notice may be excused, however, where the insured had a reasonable belief that it would not be liable for an accident (*id.*). Whether there existed a good-faith belief that an injured party would not seek to hold an insured liable, and whether that belief was reasonable under the circumstances, are questions for the finder of fact (*see Argentina v Otsego Mut. Fire Ins. Co., supra*, 86 NY2d at 750). Absent a valid excuse, however, such a failure to notify the insurer vitiates the policy (*Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 440 [1972]).

As indicated, such questions of fact exist in this matter as to whether plaintiff's delay was timely and whether plaintiff demonstrated a reasonable belief in its nonliability, thus precluding summary relief.

Tom, J.P., and Marlow, J., dissent in a memorandum by Marlow, J., as follows: I dissent.

Plaintiff Great Canal Realty Corp. hired Welldone Enterprises, Inc. (Welldone), a general contractor, to renovate certain commercial premises plaintiff owned in lower Manhattan. On May 7, 2002, Song Thor Chong, an employee of a subcontractor retained by Welldone, fell from a ladder while working at plaintiff's premises. Thereafter, in August 2002, Chong commenced the underlying personal injury action against Great Canal Realty Corp., alleging Labor Law violations. Upon being served in the underlying action in September 2002, plaintiff notified defendant Seneca Insurance Company of Chong's accident. Defendant declined coverage based on plaintiff's failure to give timely notice pursuant to the terms of the relevant insurance policies.

Thereafter, plaintiff commenced this action seeking a declaration that defendant was required to defend and indemnify it in the underlying action. After joinder of issue, defendant moved for summary judgment claiming plaintiff had been aware of the occurrence for four months before giving it notice. Plaintiff contended that it had notified defendant promptly upon receipt of the summons and complaint in the underlying action, but did not earlier notify defendant because Welldone had verbally told plaintiff that Welldone's insurance would cover the accident. The court denied defendant's motion finding that issues of fact existed as to whether plaintiff, in failing to provide defendant with timely notice, acted upon a reasonable belief that it would not be held liable for Chong's injuries.

I respectfully disagree that there are questions of fact regarding the reasonableness of plaintiff's belief of nonliability and

would therefore reverse the order of the Supreme Court and dismiss the complaint. It is well settled that compliance with an insurance policy provision is a condition precedent to coverage (*see American Tr. Ins. Co. v Sartor,* 3 NY3d 71 [2004]; *White v City of New York*, 81 NY2d 955 [1993]).[1] The duty to give timely notice of an occurrence as defined by the terms of an insurance policy is measured by a reasonableness standard (*see 875 Forest Ave. Corp. v Aetna Cas. & Sur. Co.*, 37 AD2d 11 [1971], *affd* 30 NY2d 726 [1972]). While a reasonable and good-faith belief of nonliability may excuse a failure to give timely notice to one's insurance carrier (*see White, supra; Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436 [1972]), I cannot find, as a matter of law, that plaintiff's belief of nonliability was reasonable in view of all the facts and circumstances (*see Paramount Ins. Co. v Rosedale Gardens, Inc.*, 293 AD2d 235 [2002]; *Heydt Contr. Corp. v American Home Assur. Co.*, 146 AD2d 497 [1989], *lv dismissed* 74 NY2d 651 [1989]).

Plaintiff, a commercial property owner, through its corporate president, knew its subcontractor's employee fell on plaintiff's property from a ladder, incurring an injury in a work-related accident. Even though plaintiff's president claimed she did not know the extent of his injuries, it can hardly be disputed that she, a principal of a corporate owner of real property, was, at the very least, on notice that there was a potential for serious injury when a person falls off a ladder. Furthermore, while an employee of Welldone may have conveyed a belief to plaintiff's principal that Welldone's insurance would cover the accident, plaintiff's principal had absolutely no reasonable basis to rely on that "assurance," particularly when Welldone was in no position to speak for its insurance carrier, and, moreover, where plaintiff's potential liability is absolute under Labor Law § 240 (1) when a worker is allegedly injured in an elevation-related fall (*see Zadrima v PSM Ins. Cos.*, 208 AD2d 529 [1994], *lv*

---

1. Most liability insurance contracts contain provisions which require prompt notification of an occurrence which implicates coverage. "Under traditional contract-law principles, the breach of such a contractual condition would excuse the aggrieved party's performance only if that party [were] actually prejudiced by the delay" (*American Home Assur. Co. v International Ins. Co.*, 90 NY2d 433, 440 [1997]). However, the Court of Appeals has carved out a "limited exception" to this general rule (*see Unigard Sec. Ins. Co., Inc. v North Riv. Ins. Co.*, 79 NY2d 576, 581 [1992]). Now, it is well settled in New York that an insurer need not show prejudice where the insured has failed to give prompt notification (*see* discussion, *infra*).

*denied* 85 NY2d 807 [1995];[2] *see also Metropolitan N.Y. Coordinating Council on Jewish Poverty v National Union Ins. Co. of Pittsburgh, Pa.*, 222 AD2d 420 [1995] [reasonable and prudent corporate employer could not have believed itself free from liability where, even though not originally named in lawsuit, injuries were allegedly caused by the negligence of its employee]). Thus, where a reasonable person could envision liability, that person has a duty to make some inquiry (*see White, supra*). Here, plaintiff made none.

Once plaintiff's president was charged with knowledge of the accident and had no reasonable basis to rely on the subcontractor's false representation that it would cover the underlying accident, she was required to give notice as defined by the policies' terms. The plurality writing contends that a disclaimer based on lateness is subject to an "arbitrary temporal standard." However, the terms as defined by these policies are elastic and inure to the benefit of the insured by allowing flexibility which would not be available if the cutoff date were defined by a specific number of days. Thus, if an insured proffers a valid excuse for the delay, the delay may be found to be reasonable, an option unavailable with a specific temporal standard.

Based on this record, I perceive no circumstances which would justify a time period more than a brief number of days to notify the insurer. Indeed, no matter how "as soon as practicable" or "reasonable" is defined, all plaintiff's president needed was a day or two, with relatively little effort, to consult with a reasonable resource to determine whether she was obligated to notify her insurance carrier of the underlying accident. A mere phone call to her attorney, a call to her insurance broker, or a review of the insurance policies would have been enough for her to realize that notice was required based on a potential claim.

I therefore find, on these particular facts, that plaintiff did not meet its burden of demonstrating that the delay in giving notice was reasonable (*see White, supra*; *Security Mut., supra*). To find otherwise would, in my judgment, make it far too easy for insureds to circumvent the timely notice requirements set forth in applicable insurance policies simply by claiming, or perhaps, even inventing a reasonable and good-faith belief of nonliability.

Finally, the plurality writing advocates that we abandon our own precedent and recognize the trend in the majority of jurisdictions where any delay of notice is irrelevant unless the

---

**2.** The term "absolute," as used in the context of Labor Law tort cases is explained in *Blake v Neighborhood Hous. Servs. of N.Y. City, Inc.* (1 NY3d 280, 286-291 [2003]).

insurer can show that it was prejudiced by such delay. The plurality seems to believe that an insurer's disclaimer of coverage is arbitrary and draconian, regardless of the reason for the insured's delayed notice, unless the insurer can demonstrate prejudice. Whether that view should be adopted as the law of this State is, in my judgment, a decision which I believe inappropriate for this Court to make in face of the longstanding, clear and contrary decisional authority from our State's highest court.

The plurality writing maintains that the Court of Appeals has expressed its "antipathy" toward the no-prejudice exception. Regardless, "it is settled law in New York that '[a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy . . . and the insurer need not show prejudice before it can assert the defense of noncompliance' " (*American Home Assur.*, 90 NY2d at 440, quoting *Security Mut.*, 31 NY2d at 440). Moreover, the Court of Appeals, as recently as 2002, left for another day the issue of whether to continue this longstanding rule, enunciated as it was, with crystal clarity in *Security Mutual*, that an insurer, in order to validly disclaim coverage, need not prove prejudice after it receives a delayed notice of claim from its insured. Indeed, we have consistently and appropriately followed that high court rule ourselves as we are required to do (*see e.g. Paramount Ins. Co.*, *supra*; *Heydt, supra*).

I also note that the United States Court of Appeals, in *Mark A. Varrichio & Assoc. v Chicago Ins. Co.* (312 F3d 544 [2002], *certified question withdrawn and appeal dismissed* 328 F3d 50 [2003], *certified question withdrawn* 100 NY2d 527 [2003]), recently expressed some doubt about whether, on the *Varrichio* facts, New York would still adhere to this longstanding policy. There, the case involved allegations of legal malpractice wherein the insured, an attorney, promptly notified his insurer when "it became apparent that [he] was going to be sued" (*id.* at 545), but, a few months later, failed to notify his malpractice carrier promptly when he was served with the anticipated summons and complaint. During that intervening period, the malpractice insurer investigated and analyzed the potential claim and had "regular contact" with the insured. (*Id.*) The Second Circuit's doubt arose from certain language the New York Court of Appeals used in *Matter of Brandon* (*Nationwide Mut. Ins. Co.*) (97 NY2d 491 [2002]), wherein it noted that New York is among a minority of states that still adhere to the no-prejudice excep-

tion.[3] However, the *Varrichio* court, considering it "prudent," chose to ask New York's highest court whether a shift away from the no-prejudice exception "is under way in New York," instead of "seeking to adjudge the issue ourselves" (312 F3d at 549).[4] The Appellate Division, Second Department, has similarly, and I believe appropriately, declined to adjudicate this issue, finding that "whether such precedent should be overruled is a matter for the Court of Appeals" (*Blue Ridge Ins. Co. v Jiminez,* 7 AD3d 652, 654 [2004]).

It is my strong view that, as an intermediate appellate court, we must follow the clear and longstanding rule which our highest court laid down decades ago (*see Security Mut., supra*) and has recently reaffirmed (*see e.g. American Home Assur., supra; Matter of Brandon, supra; see also Uniguard Sec. Ins. Co., Inc. v North Riv. Ins. Co.,* 79 NY2d 576 [1992] [reaffirming no-prejudice rule with respect to primary liability insurance but finding rule not applicable to reinsurance contracts]; *Green Door Realty Corp. v TIG Ins. Co.,* 329 F3d 282 [2003] [applying New York's no-prejudice rule]; *Cade & Saunders, P.C. v Chicago Ins. Co.,* 332 F Supp 2d 490 [2004] [applying New York's no-prejudice rule]).

Contrary to the plurality writing, I believe we ought not act prematurely to change such a fixed precept, simply based on dictum which does not, with any precision, inform us whether the court will, or might, change an important policy, whether any possible rule change will be a change in whole or in part, or further, whether any change will impose a burden on the insurer to prove prejudice or on the insured to prove its absence (*see* Adolfsen and Melito, Outside Counsel, *New York Insurance Law's Late Notice Is Alive and Well,* NYLJ, Oct. 28, 2004, at 4, col 4).

This is not a situation where our High Court has made an ambiguous statement about the precise nature of a declared rule or about exactly when or how it must be applied. Rather, this is merely a matter where the Court of Appeals has, intentionally or not, left a lingering doubt about whether, or in what form, or for how long it will permit this longstanding and clear policy to survive, either in whole or in part. Surely, it is

---

3. There are at least a dozen states which adhere to the no-prejudice exception under similar circumstances. For a detailed survey and chart of where the individual states stand on this issue *see* Ostrager and Newman, Insurance Coverage Disputes § 4.04 (12th ed).

4. The case was subsequently settled, the certification withdrawn and the appeal dismissed (*see Mark A. Varrichio & Assoc. v Chicago Ins. Co.,* 328 F3d 50 [2003]).

not for us to attempt to read the High Court Judges' minds and, thus, to presume or to foretell that someday they will modify or overrule that clear policy.

As we are clearly bound by *Security Mutual*, whose holding, to date at least, remains intact in the context of facts like those sub judice and as I find plaintiff's belief of nonliability unreasonable as a matter of law, I would reverse the order on appeal, grant summary judgment, and dismiss the complaint.