50 F.3d 141
 148 L.R.R.M. (BNA) 2838
 Frank SPARACINO, as President of the Newspaper and Mail
Deliverers' Union of New York and Vicinity,
Plaintiff-Appellant,
v.
PAWTUCKET MUTUAL INSURANCE COMPANY, Defendant-Third-Party
Plaintiff-Appellee,
v.
IMPERIAL DELIVERY SERVICE, INC., Third-Party Defendant-Appellant,
Gary Lee Mauney & Robert J. Boyle, Third-Party Defendants.
 No. 701, Dockets 94-7487L, 94-7609.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 28, 1994.
Decided March 13, 1995.
 
 Philip Sipser, New York City, for plaintiff-appellant.
 Stephen M. McCabe, New York City, for defendant-third-party plaintiff-appellee.
 Carol A. Cimkoski, Mineola, NY, for third-party defendant-appellant and third-party defendants.
 Before: MAHONEY, McLAUGHLIN and HEANEY,* Circuit Judges.
 HEANEY, Senior Circuit Judge:
 
 
 1
 Frank Sparacino, president of the Newspaper and Mail Deliverers' Union of New York and Vicinity ("the Union"), sought a declaration that Pawtucket Mutual Insurance Company had a duty to defend and indemnify the Union in a personal injury action. The district court granted summary judgment for Pawtucket, finding that the insurance company had no obligation to defend or indemnify the Union, its insured, because the Union had not given Pawtucket timely notice of the occurrence of the personal injury as required by its insurance contract. We reverse.
 
 
 2
 The underlying personal injury action arose when union member Robert J. Boyle, who was picketing at a job site, hurled a rock through a bus window. The rock struck Gary Lee Mauney in the skull and severely injured him. Boyle later pleaded guilty to second degree assault and possession of a deadly weapon. Approximately one year after the incident, Mauney brought an action against the Union alleging negligent supervision of the picketers and ratification of Boyle's assault upon Mauney.
 
 
 3
 To obtain coverage under its insurance policy, the Union must establish that it complied with Section IV.2 of the policy. Under this section the Union has a duty to notify the insurer "as soon as practicable of an 'occurrence' or an offense which may result in a claim." The Union also has a duty to notify the insurer "as soon as practicable" when "a claim is made or 'suit' is brought" against the Union. The latter duty was clearly fulfilled properly and promptly when the Union provided immediate notice to the insurer of Mauney's suit against the Union.
 
 
 4
 We focus then on whether the Union notified Pawtucket of the " 'occurrence' or offense" or was excused from doing so. On appeal the Union argues, first, that actual notice was given to Pawtucket soon after the incident and, second, that any delay in providing notice was excused by its reasonable belief that it bore no liability for this incident and, in the alternative, that its insurance policy did not provide coverage for the incident. We need not address the first contention, because we hold that the Union's delayed notice was reasonable under the circumstances and therefore excused.
 
 
 5
 The district court granted summary judgment for Pawtucket on the ground that the Union had "no valid excuse for failing to give notice (which was probably due to the belief that there was no coverage, which may in fact be the case)...." Sparacino v. Pawtucket Mut. Ins. Co., 93 Civ. 5014 (GLG), slip op. at 5 (S.D.N.Y. Apr. 12, 1994). The court therefore concluded that the Union "is not entitled to coverage because of its failure to give timely notice." Id. We review de novo the district court's grant of summary judgment. Ogden Corp. v. Travelers Indem. Co., 924 F.2d 39, 41 (2d Cir.1991).
 
 
 6
 Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy. Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir.1987); Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos., 748 F.2d 118, 121 (2d Cir.1984); Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 340 N.Y.S.2d 902, 904, 293 N.E.2d 76, 78 (1972). An insured's failure to give timely notice to its insurer may be excused, however, by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability. Commercial Union Ins., 822 F.2d at 271; Security Mut. Ins., 340 N.Y.S.2d at 904-05, 293 N.E.2d at 78-79. That is, a delay will be excused if the insured "in good faith reasonably believes there is no policy coverage or that the insured was not liable on the main action." Kason v. City of New York, 83 Misc.2d 810, 373 N.Y.S.2d 456, 459 (N.Y.Sup.Ct.1975) (citing cases); accord Beach Haven Apartments v. Allcity Ins. Co., 182 A.D.2d 658, 581 N.Y.S.2d 689, 690 (1992) ("[T]he insured's good-faith belief that it is not liable will excuse a failure to give timely notice if the belief is reasonable under all the circumstances of the case."). The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim. Commercial Union Ins., 822 F.2d at 272; Utica Mut. Ins., 748 F.2d at 121-22. Where the insured's excuse is not valid, the insurer need not demonstrate prejudice before it can assert the defense of noncompliance by the insured. Security Mut. Ins., 340 N.Y.S.2d at 905, 293 N.E.2d at 78.
 
 
 7
 We analyze the Union's asserted excuses along two lines: First, did the Union have a good faith, reasonable belief that it was not covered? Second, and in the alternative, did the Union have a good faith, reasonable belief that it was not liable for an intentional tort (and crime) committed by one of its members?
 
 
 8
 The Union reported the rock-throwing incident to its insurance broker, Richard Dovner, shortly after it occurred. A couple of days later Dovner informed the Union in writing that the policy did not cover any injuries in connection with this incident:
 
 
 9
 As per our conversation of 6/29/92 the general liability policy with Pawtucket Mutual only covers the Labor union Office for bodily injury and/or property damage. It will not pick up any coverage for the rock throwing incident. The gentleman that is involved may want to contact his Homeowners ins. carrier. There "maybe" coverage afforded under that policy.
 
 
 10
 Dovner Memo. of July 1, 1992, Jt.App. 171.
 
 
 11
 As the court recognized in Universal Underwriters Ins. Co. v. Patriot Ambulette, Inc., 149 A.D.2d 500, 539 N.Y.S.2d 981, 982 (1989), it is reasonable for an insured to rely on statements of an insurance broker. In that case the owner of a vehicle involved in an accident immediately contacted his insurance broker, but the broker mistakenly notified the wrong insurance company. Although the insurer did not receive actual notice of the accident until five months later, the court held that the delay in providing notice was not unreasonable under all of the circumstances.
 
 
 12
 The Union here relied on its broker's broad and unequivocal statement that "the general liability policy with Pawtucket Mutual only covers the Labor union Office for bodily injury and/or property damage" and "will not pick up any coverage for the rock throwing incident." Although the broker was apparently mistaken in his interpretation of the scope of the insurance contract, it was reasonable for the Union to rely on the statement and to believe that the policy did not cover any aspect of the rock-throwing incident. We conclude that the Union's belief in noncoverage was reasonable under the circumstances presented here.
 
 
 13
 We also conclude, in the alternative, that the Union's delay in notifying Pawtucket is excused by its belief that it bore no liability for this incident. Under New York law, a reasonable belief in nonliability constitutes a valid excuse for failure of or delay in notification. Beach Haven Apartments, 581 N.Y.S.2d at 690.
 
 
 14
 The Union argues that, until Mauney filed suit against it, it did not believe it could be held liable in connection with the rock-throwing incident. Therefore, it argues, its delay in providing notice should be excused. New York law supports the Union's position. For example, in Public Service Mut. Ins. Co. v. Goldfarb, 53 N.Y.2d 392, 442 N.Y.S.2d 422, 425, 425 N.E.2d 810, 813 (N.Y.1981), the court held that a dentist whose sexual abuse of a patient resulted in a criminal conviction and in professional discipline nevertheless had no duty to notify his insurance company, because "he had no knowledge that any civil claim would be brought against him until he was served with process...." In Beach Haven Apartments, the court excused a building owner's 22-month delay in notifying his insurer that a tenant was raped and assaulted in the basement, because the owner had a good faith, reasonable belief that he could not be held liable for a criminal attack by a third party. 581 N.Y.S.2d at 690.
 
 
 15
 Accordingly, given that the Union's officers are nonlawyers with little expertise in tort liability, we conclude that it was reasonable for them to believe that they could not be held liable for an intentional, and criminal, assault committed by a union member.[1] We note that there is no evidence in the record that the Union acted in bad faith toward Pawtucket, and indeed the Union notified the insurer as soon as it learned that Mauney, the injured party, had named the Union as a defendant in his lawsuit.
 
 
 16
 In light of all the circumstances, we find that the Union's delay in providing notice to Pawtucket of the rock-throwing incident is excused by the Union's reasonable belief in noncoverage under the policy and nonliability for the incident. Accordingly, we reverse the summary judgment in favor of Pawtucket and remand for further proceedings on the merits.
 
 
 
 *
 The Honorable Gerald W. Heaney, United States Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Though the Union was later found in contempt of a district court order for failing to control its members during the strike, that fact alone does not undermine the reasonableness of the Union's belief that it would not be civilly liable for the intentional, criminal act of a union member