**AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff,**

v.

**GENERAL HOST CORPORATION and American Salt Company, Inc., Defendants.**

**Civil Action No. 84–1802–FGT.**

United States District Court, D. Kansas.

March 8, 1996.

M. Kathryn Webb, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, Timothy C. Russell, Thomas S. Schaufelberger, Douglas Crowne McAllister, Drinker, Biddle & Reath, Washington, DC, T. Andrew Culbert, Tracey S. Ging, Drinker, Biddle & Reath, Philadelphia, PA, for plaintiff.

Ron C. Campbell, Thomas D. Kitch, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, Rodney Zerbe, Thomas F. Munno, William F. Downey, Dechert, Price & Rhoads, New York City, for defendants.

Ron C. Campbell, Thomas D. Kitch, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, Rodney Zerbe, Dechert, Price & Rhoads, New York City, for counter-claimants.

M. Kathryn Webb, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, Timothy C. Russell, Thomas S. Schaufelberger, Drinker, Biddle & Reath, Washington, DC, for counter-defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is a declaratory judgment action in which the plaintiff, American Motorists Insurance Company ("AMICO"), seeks a determination that it is not responsible for paying the judgment or defense costs for the defendants in *Miller v. Cudahy*, a case which was tried to this court some twelve years ago. *Miller* involved salt pollution of the Cow Creek Aquifer caused by operations of the American Salt plant near Lyons, Kansas. *Miller v. Cudahy*, 592 F.Supp. 976 (D.Kan. 1984), *aff'd in part, rev'd in part*, 858 F.2d 1449 (10th Cir.1988), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). The American Salt plant was, at that time, owned by a wholly owned subsidiary of General Host.

The court granted the plaintiff's motion for summary judgment in this case in 1987. *American Motorists Ins. Co. v. General Host*, 667 F.Supp. 1423 (D.Kan.1987). The matter was appealed to the Tenth Circuit Court of Appeals, which affirmed this court's grant of summary judgment as to the issue of plaintiff's duty to indemnify, but reversed as to the duty to defend. *American Motorists Ins. Co. v. General Host*, 946 F.2d 1489 (10th Cir.1991). The appellate court held that there was a credible possibility at the outset of *Miller* that the action would be covered under the AMICO policy, thus triggering the duty to defend *Id.* at 1491. Remand was necessary, however, to determine whether any defenses to the duty to defend, such as late notice, apply in this case. *Id.* The matter is before the court on plaintiff's motion for summary judgment on its own claims and on defendants' counterclaims. (Doc. 154).[1]

## 1. Undisputed Facts

The facts surrounding this case are largely undisputed. In May 1977, the *Miller* lawsuit was filed in the United States District Court for the District of Kansas. The matter was tried to the court in 1984, resulting in a judgment for the plaintiffs for actual and punitive damages. *Miller*, 592 F.Supp. 976.

In 1977, General Host's insurance carrier was Liberty Mutual. Liberty Mutual agreed to defend General Host under a reservation of rights.

AMICO issued general liability policies to General Host and the American Salt Company which were effective from November 1, 1981, through June 15, 1984. These policies were countersigned and issued in the state of New York. Most of the negotiations were held in New York as well.

The policies provided that AMICO had the "duty to defend any suit against the insured alleging ... property damage and seeking damages...." (Plaintiff's exhibit 31, p. 1). The policies also contained a provision requiring the insured to give written notice of an occurrence "as soon as practicable" and, in the event of a suit or claim brought against the insured, requiring the insured to forward to the insurer papers involved in the suit. (Plaintiff's exhibit 31, p. 17).

During negotiations for the policies, General Host informed AMICO of the *Miller* case, but told AMICO representatives that the *Miller* case was based on events which had occurred in the past and would not,

---

1. Defendant General Host has emphasized that its opposition brief is submitted only on its own behalf and not on behalf of defendant American Salt Company. The court has received no submissions from American Salt. However, all the issues and arguments presented on summary judgment apply equally to both defendants. Accordingly, the court has the necessary information to resolve fully the issues before it.

therefore, be covered under the AMICO policies. At that time, General Host did not, in fact, expect to demand coverage from AMICO for the *Miller* action.

General Host contends that before December 9, 1983, at which the time the court held a pretrial conference in *Miller*, it was not aware that the *Miller* case involved claims that arguably could be covered by the AMICO policies. General Host claims that until that time, it believed the *Miller* plaintiffs sought only permanent damages measured by the diminution in value of their properties due to the salt pollution.[2]

General Host engaged in settlement negotiations with the *Miller* plaintiffs from October 1983 until shortly before trial. On March 9, 1984, General Host sent a letter to its insurance broker, John Schroeder, for the purpose of demanding coverage under the AMICO policies. Schroeder sent a letter to AMICO demanding coverage on March 19, 1984. The *Miller* trial was set to begin on March 19, 1984, and actually did commence on March 26, 1984. *Miller*, 592 F.Supp. at 981.

The *Brothers* action, involving the same salt pollution and some of the same plaintiffs, was filed on September 5, 1984. Defendant informed Schroeder of the filing of the *Brothers* suit by a letter dated September 13, 1984. Schroeder sent a letter to AMICO on September 18, 1984, conveying the same information. The filing of the *Brothers* had been anticipated since the court had ruled in *Miller* that the plaintiffs could recover temporary damages only through the year of trial.

## 2. Standard for Summary Judgment

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2552 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

**2.** AMICO argues that from the beginning of the *Miller* litigation, the plaintiffs claimed that operations of the salt plant constituted a continuing nuisance. Nevertheless, for purposes of deciding this motion, the court accepts the defendant's contention that was unaware until December 1983 that the *Miller* plaintiffs alleged acts potentially covered by the AMICO policy.

### 3. Choice of Law

■ The court first addresses the issue of which state's law governs the plaintiff's claims. There is no dispute that a federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Furthermore, the parties agree that under Kansas law, interpretation of a contract is a matter governed by the law of the state in which the last act necessary for the contract's formation is completed. *Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 642–43, 685 P.2d 321 (1984).

■ The plaintiff contends that the last act necessary for the formation of the insurance contract at issue in this case was the signing and countersigning of the policy, which occurred in New York. The court agrees. *See Jameson v. Pack,* 815 F.Supp. 410, 413 (D.Kan.1993); *RLI Ins. Co. v. Kary,* 779 F.Supp. 1300, 1303 (D.Kan.1991); *Civic Assocs., Inc. v. Security Ins. Co.,* 749 F.Supp. 1076, 1079 (D.Kan.1990). Defendant argues that the last act necessary for the formation of an insurance contract may be delivery, which in this case occurred in Connecticut. There are cases holding that group insurance policies are governed by the law where the master policy is delivered, *Frasher v. Life Investors Ins. Co of America,* 14 Kan.App.2d 583, 796 P.2d 1069 (1990); *Simms,* 9 Kan. App.2d at 644, 685 P.2d 321, but there is no indication that this rule applies outside the context of group life or health insurance. In the other case cited by defendant, *See v. United Ins. Co,* 171 Kan. 146, 147, 230 P.2d 1008 (1951), the court held that Kansas law applied where not only had the policy been delivered to Kansas, but the insured had completed and signed the application for insurance in Kansas and had mailed premium payments from Kansas.

Because the policy at issue in this case was issued in New York, this court applies the law of New York in this case.

### 4. Duty to Defend

■ An insurer's duty to defend is broader than its duty to indemnify. *Ameri-can Motorists,* 946 F.2d at 1490. "So long as the insured can show a nonfrivolous possibility that the claim against it may fall within the coverage of the insurance contract, the insurer has a duty to defend the insured," even if it ultimately is not obligated to indemnify any liability. *Id.* In determining whether the insurer has the duty to defend, the court looks at the "outstanding viable allegations as of the date the demand to defend was made." *Id.* at 1491. The Tenth Circuit in this case looked at the complaint and the pretrial order, which had been issued by the time a demand was made. *Id.* at 1491. The court held that the plaintiffs' allegations of negligent and willful conduct, which did not include precise allegations of when the pollution occurred, were broad enough to support a finding of "sudden and accidental" pollution, which the AMICO policies would have covered. *Id.* The finding that the pollution was of a longstanding and ongoing nature was made after trial. *Id.*

■ Plaintiff argues that it is excused from its duty to defend because the defendant in this case failed to provide the plaintiff timely notice of the underlying claim. The policy at issue in this case contained a provision requiring General Host to notify the plaintiff of an occurrence "as soon as practicable." New York courts interpret such a provision as requiring notification in a reasonable time. *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.,* 797 F.Supp. 176, 184 (E.D.N.Y.1992). The notice provision is triggered when the circumstances would suggest to a reasonable person the possibility of a claim. *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 272 (2d.Cir.1987). Compliance with a notice provision is a condition precedent to the insurer's duty to provide coverage and duty to defend. *Avondale Indus., Inc. v. Travelers Indem. Co.,* 774 F.Supp. 1416, 1429 (S.D.N.Y.1991). Under New York law, failure to give proper notification relieves the insurer of the duty to defend even if the insurer has independent knowledge of the occurrence and even if the insurer is not prejudiced by the lack of compliance with the notice provision. *Id.; Mount Vernon,* 797 F.Supp. at 184.

■ Ordinarily, the issue of the reasonableness of notice is a question of fact for trial. *Travelers Ins. Co. v. Buffalo Reins. Co.*, 739 F.Supp. 209, 212 (S.D.N.Y.1990). Nevertheless, in the absence of a reasonable excuse or mitigating factor, the New York courts permit the timeliness issue to be disposed of before trial. *Id.* Lack of knowledge of an occurrence or a good faith reasonable belief of nonliability constitutes a mitigating factor. *Id.* The insured bears the burden to show the delay was reasonable. *Mount Vernon,* 797 F.Supp. at 184.

■ The defendant in this case argues that it has presented a sufficiently reasonable excuse for its delay to create a jury question. A good faith reasonable belief that an occurrence is not covered can excuse failure to notify the insurer of the occurrence. *Sparacino v. Pawtucket Mut. Ins. Co.,* 50 F.3d 141, 143 (2d. Cir.1995); *Avondale Indus.,* 774 F.Supp. at 1431. Defendant contends that it was unaware until the December 1983 pretrial conference that there was a possibility the AMICO policy would be implicated in the *Miller* suit. Defendant argues, therefore, that demanding coverage in March 1984 constituted reasonable notice.

■ Under the circumstances of this case, considering the facts in the light most favorable to the defendant, the court holds that the defendant's delay in providing notice to the insurer was unreasonable as a matter of law. Even accepting defendant's argument that it had no reason to believe the AMICO policy was implicated in the *Miller* case until December 9, 1983, the defendant has provided no arguably reasonable explanation for the three-month delay that followed. It is important to note that during that three month period, trial of the *Miller* case was scheduled to begin on March 19, 1984. The insurance broker was not given notice until March 9, 1984, just ten days before trial was scheduled to begin, and AMICO itself was not notified until March 19, 1984. It is also relevant that settlement negotiations were conducted and concluded during that time. *See American Home Assurance Co. v. Republic Ins. Co.,* 984 F.2d 76

(2d Cir.), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993) (36–day delay in notification unreasonable under New York law, particularly considering that settlement negotiations for underlying claim were conducted during that time).

■ The court also rejects defendant's argument that notifying AMICO that the *Miller* lawsuit was pending before entering into the policy constituted reasonable notice. The defendant at that time did not demand coverage and in fact informed AMICO that the *Miller* lawsuit would not be covered under the new policy. Under New York law, that the insurer is aware of the occurrence does not excuse the insured's failure to notify the insurer when it intends to seek coverage. *See Mount Vernon,* 797 F.Supp. at 184.

■ The late notice defense applies to the *Brothers* action as well as the *Miller* action. Although General Host demanded coverage soon after the *Brothers* action was filed, General Host had anticipated the filing of that lawsuit much earlier.[3] At the time General Host learned that the *Miller* plaintiffs sought temporary damages, General Host was on notice that other lawsuits would likely be filed as the causes of action accrued. Therefore, the duty to notify arose at that time, with a continuing duty under the policy to forward copies of pleadings to AMICO. Again, General Host failed to give timely notice under the terms of the policy.

Because General Host has provided no reasonable explanation for its delayed notification, AMICO is entitled to summary judgment on its late notice defense and, therefore, on its claim for declaratory judgment. Plaintiff has presented other arguments in support of its motion for summary judgment, but because the late notice issue is dispositive, the court need not address those arguments.

**5. Counterclaims**

Next, plaintiff seeks summary judgment on the defendants' counterclaims. For the

**3.** General Host's demand letter of September 13, 1984, indicates that the filing of the *Brothers* action had been "expected." (Defendant's exhibit 49).

reasons stated above, the plaintiff is entitled to summary judgment on defendants' first counterclaim, in which defendants seek a declaratory judgment that AMICO is obligated to defend and indemnify defendants for the *Miller* and *Brothers* actions, and on the second counterclaim, by which defendants seek damages under a breach of contract theory for the plaintiff's failure to defend or indemnify.[4]

The court turns to defendants' third and fourth counterclaims, both of which relate to Count VI of the Complaint in this action. Count VI is a claim for rescission of the insurance contract in which plaintiff alleges that the defendants intentionally concealed the fact of the ongoing pollution at the American Salt plant and that the *Miller* suit had been filed. The evidence before the court shows that the *Miller* case was disclosed to the plaintiff before the insurance policies were issued, but that at that time, there was no indication that the policies would be implicated in the *Miller* litigation.

 In their third counterclaim, defendants contend that plaintiff has breached its duty of good faith and fair dealing. Defendants allege that AMICO acted in bad faith by (1) filing the instant action, (2) falsely accusing defendants of misrepresentation in Count VI, (3) amending the pollution exclusion in the 1984–1985 policy and (4) canceling the 1984–1985 policy. There is no dispute that plaintiff owed the defendants a duty of good faith and fair dealing, and that an insured can collect damages for foreseeable harm caused by a breach of this duty. *In re Balfour Maclaine Int'l, Ltd.*, 873 F.Supp. 862, 872 (S.D.N.Y.1995); *McCauley Enterprises, Inc. v. New Hampshire Ins. Co.*, 716 F.Supp. 718, 721 (D.Conn.1989) (citing *Buckman v. People Express, Inc.*, 205 Conn. 166, 530 A.2d 596 (1987)).[5] However, the court agrees with the plaintiff that none of the defendants' allegations presents a genuine issue of material fact as to the bad faith counterclaim. The plaintiff was within its

rights in filing the instant action and has succeeded on the merits. Likewise, the defendant concedes that the plaintiff had a contractual right to cancel the 1984–1985 policy. Furthermore, the defendant cannot show bad faith by alleging that the plaintiff attempted to amend the insurance policy before canceling it. Finally, the defendant has presented no evidence that the falsity of the misrepresentation claim was known or should have been known by the plaintiff at the time the claim was made. The court agrees that plaintiff should have dismissed the claim upon discovering it had no merit, but there is no evidence to suggest that the failure to do so was anything more than an oversight. In addition, defendants have presented no evidence that they were damaged by the bringing of Count VI, and only speculate that the claim for rescission damaged defendants' position in the *Miller* litigation.

 Defendants contend in their fourth counterclaim that plaintiff's Count VI constitutes abuse of process. Defendants allege that the plaintiff, knowing the allegations in Count VI would be used against the defendants in the *Miller* suit, brought Count VI as part of an effort to malign and intimidate the defendants. Although AMICO's motion asks for summary judgment on the defendants' counterclaims, none of the supporting or opposing memoranda address this counterclaim at any length.

As a ground for summary judgment, AMICO does state that it had no duty to defend or to indemnify. This is insufficient to warrant summary judgment on the abuse of process claim because such a claim does not require a showing that the underlying action was meritless. *Hokanson v. Lichtor*, 5 Kan. App.2d 802, 810, 626 P.2d 214 (1981) ("immaterial ... [that] proceedings terminated in favor of person instituting or initiating them," quoting Restatement (Second) of

---

**4.** Although the parties did not address the first and second counterclaims in their memoranda, the court has sufficient information to rule on these claims because the issues are identical to those raised in the plaintiff's claims.

**5.** The parties dispute whether New York law or Connecticut law would apply to this claim. The court will not resolve this issue because the same result would be reached in this case under either state's law.

Torts § 682 cmt. a (1977)).[6] Although on the facts of this case, the abuse of process counterclaim appears to be quite weak, AMICO has not met its initial burden under Rule 56 of demonstrating the absence of a genuine issue of material fact. Accordingly, the court must deny AMICO's motion as to the defendants' fourth counterclaim.

**IT IS BY THIS COURT THEREFORE ORDERED** that plaintiff's motion for summary judgment (Doc. 154) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that plaintiff is found to have no obligations to defendants under the policy of insurance for the costs of defending the *Miller* or *Brothers* actions, or for any damages awarded in those actions.

---

**6.** Although no Kansas court has addressed the choice of law rules to be applied in abuse of process claims, the court believes the Kansas courts would follow Restatement (Second) of Conflicts of Laws § 155 (1971), which provides:

The rights and liabilities of the parties for . . . abuse of process are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

In this case, the occurrence complained of, the filing of Count VI, took place in Kansas, and the defendants claim the purpose of that filing was to intimidate the defendants by jeopardizing their position in another lawsuit litigated in Kansas. The court is not aware of another state which has a more significant relationship to the parties and the occurrence. Accordingly, court applies Kansas substantive law on abuse of process.