**MT. HAWLEY INSURANCE COMPANY, Plaintiff,**

v.

**FRED A. NUDD CORPORATION, Defendant.**

No. 04–CV–6041CJS.

United States District Court, W.D. New York.

Feb. 18, 2005.

Joseph D. Piccioti, Harris Beach LLP, Pittsford, NY, for plaintiff/counter defendant.

Steven A. Maas, Kaman, Berlove, Marafioti, Jacobstein & Goldman, Rochester, NY, for defendant/counter plaintiff.

## DECISION AND ORDER

SIRAGUSA, District Judge.

## INTRODUCTION

This is an action for a declaratory judgment regarding two commercial liability insurance policies issued by plaintiff to defendant. Plaintiff seeks a declaration that it has no obligation to defend or indemnify defendant under the subject policies. Now before the Court is defendant's cross-motion [# 18] for summary judgment. For the reasons that follow, the application is denied.

## BACKGROUND

The following facts are undisputed unless otherwise noted. At all relevant times plaintiff Mt. Hawley Insurance Company ("plaintiff") was an insurance company located in Peoria, Illinois that sells commercial general liability policies. Defendant Fred A. Nudd Corporation ("defendant") was a company located in Williamson, New York that manufactured and sold towers, known as "monopoles," used by the telecommunications industry to support antennae. Defendant designed its monopoles in-house, then sent the designs to an engineering firm, Underhill Consulting Engineer, P.C. ("Underhill") to be approved.

On or about October 30, 2000, plaintiff issued a commercial liability insurance policy to defendant. On September 1, 2001, plaintiff issued a second such policy to defendant. On both occasions, defendant purchased the policies from plaintiff through an insurance agency, Loomis and Company ("Loomis"), located in Rochester, New York. The policies together covered the period October 30, 2000 through September 1, 2002. Both policies bear the policy number MGL0128487, and contain the same pertinent provisions. In relevant part, both policies state:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>
> \*    \*    \*    \*    \*    \*
>
> This insurance applies ... only if ... [t]he "bodily injury" or "property damage" is caused by an "occurrence"....
>
> \*    \*    \*    \*    \*    \*

**Duties In The Event of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insure, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\* \* \* \* \* \*

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Prior to purchasing the policies from plaintiff, defendant had purchased the same type of coverage for the period 1998–1999 from the Granite State Insurance Company ("Granite State"). Defendant also purchased the Granite State policy through Loomis. According to defendant's unsworn answer with counterclaim, the Granite State policy is identical to the policies issued by plaintiff.

Defendant sold monopoles to clients including SBA Network Services, Inc. ("SBA"), American Tower Corporation ("ATC") and Sprint Spectrum, L.P. ("Sprint"). According to plaintiff, at the time of these sales, defendant made certain representations to SBA, ATC, and Sprint regarding the number of antennae that each monopole could support.

In or about early 2001, ATC notified defendant that the monopoles were not properly designed to support the number of antennae specified by defendant. Defendant then undertook remedial measures to strengthen the monopoles. Some time prior to August 2001, defendant informed Granite States of a potential claim by ATC, arising out of the defective monopoles. By letter dated August 30, 2001, Granite State's claims administrator informed defendant that any such potential claims would not be covered by the policy, in part because there had been no "occurrence":

As there is no formal complaint filed against Fred Nudd Corporation, we assume that ATC is putting you on notice of a *potential* claim only. At this time, it appears there are no monetary allegations alleged but they are requesting that you address the structural integrity issue and try to resolve same prior to formal litigation.

\* \* \* \* \* \*

"[O]ccurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \* \* \*

Pursuant to the terms and conditions of this policy as set forth above, and as otherwise contained therein, there may be no coverage for the *potential* claim at issue. Coverage issues include but are not limited to the following: ... To the extent the claim does not arise from "occurrence" as that term is defined n the policies, there is no coverage.

Nudd Aff., Ex. K (emphasis added).

Having been made aware of the design defect by ATC, defendant then apparently notified its other customers of the problem. Clark Cogan ("Cogan"), one of defendant's employees, wrote to SBA on August 28, 2001 regarding "design issues on some of the monopoles," and stated:

An error was discovered in the design program and caused some of the steel used to fabricate these monopoles to be insufficient to meet the specified antenna loading. Although this error was

corrected earlier this year subsequent analysis has shown the need to strengthen these monopoles. Defendant's Cross Motion, Ex. J. Defendant then also took steps to structurally strengthen SBA's monopoles. Defendant did not directly notify plaintiff about the problem with the monopoles sold to SBA at that time. However, at some point in 2001, defendant's president, Thomas Nudd, had conversations with Dale Haefner of Loomis "concerning SBA's design issues." Nudd Aff. ¶ 11. In or about November 2001, SBA apparently notified Loomis directly by telephone of the problems with defendants' monopoles. SBA subsequently had another telephone conversation with Loomis regarding the situation on or about June 5, 2002.

On June 6, 2002, SBA wrote to Loomis, claiming that it had suffered specific dollar amounts of damages as a result of the defects, and stating: "If [SBA] and Nudd are unable to reach a settlement during the next few days, [SBA] anticipates exercising its legal rights. [SBA] leaves it to you as to whether notification of Nudd's insurance carrier of [SBA's] claim is necessary." There is no indication in the record that SBA made any monetary demand prior to this. To the contrary, Thomas Nudd states in his affidavit that "no monetary issues were raised by SBA until the notice letter of June 4, 2002 was immediately followed by service of the Summons and Complaint." Nudd Aff. ¶ 12.

SBA sued defendant and Underhill in New York State Supreme Court, Monroe County, a few days later, on or about June 14, 2002, for breach of contract, breach of express and implied warranties, and negligence. After being served with a summons and complaint in that action, defendant faxed copies of those documents to Loomis on or about July 24, 2002. Defendant did not mention any claim by ATC. Loomis then apparently forwarded a notice to W.H. Greene & Associates, Inc. ("W.H.Greene"), an insurance broker through whom Loomis purchased the subject insurance policies for defendant.

It appears that W.H. Greene sent notice of SBA's lawsuit to plaintiff on or about July 31, 2002. By letter dated October 29, 2002, plaintiff notified defendant that it would not defend or indemnify defendant in connection with the suit by SBA, for two reasons: 1) the claims by SBA were not covered; and 2) defendant gave late notice. With regard to its assertion regarding late notice, plaintiff contended that defendant's notice was a year late: "Mt. Hawley's first notice of this 'claim' was after suit was filed against Nudd Corporation, nearly one year after Nudd Corporation knew of the error which was likely to result in a claim." Mt. Hawley Disclaimer letter, Nudd Aff. Ex. G.

Plaintiff commenced the subject action on January 30, 2004. Plaintiff's complaint purports to state six separate causes of action, each seeking a declaration that plaintiff has no duty to defend or indemnify defendant in connection with ATC's lawsuit against defendant because: 1) defendant gave late notice of a potential occurrence or claim; 2) defendant voluntarily made payments and assumed obligations prior to providing notice to plaintiff; 3) the claims being asserted against defendant in the other lawsuit arise from breaches of contract, breach of warranties, and faulty design and engineering, and are therefore not covered; 4) the monopoles were constructed prior to October 30, 2000, therefore any "property damage" that took place during the manufacturing process is outside the coverage period; 5) the claims against defendant allegedly involve damage to defendant's "product" and are therefore excluded; and 6) assuming that defendant affirmatively mis-

represented the monopoles' ability to bear weight, as alleged in the other action, any "expected" or "intended" damage is excluded, as is any liability for punitive damages assessed against defendant. The complaint does not mention SBA or Sprint.

On February 13, 2004, defendant filed in this action an answer with a counterclaim. The counterclaim seeks a declaratory judgment that plaintiff is obligated to defend and indemnify defendant under the polices in connection with the ATC and SBA lawsuits. Plaintiff did not subsequently seek dismissal or the counterclaim or move to amend its complaint to include the lawsuit by SBA.

On May 20, 2004, a third lawsuit was commenced against defendant by Sprint. This action was also filed in this Court, and asserts claims for breach of contract and breach of express and implied warranties in connection with defendant's sale of monopoles to Sprint.

Plaintiff filed a motion for summary judgment [# 10] on May 20, 2004, well in advance of the deadline for the completion of discovery set by the Court.[1] In the motion, plaintiff contends that it has no obligation to defendant in connection with ATC's lawsuit because defendant failed to give timely notice as required by the policy, and because defendant impaired plaintiff's subrogation rights by attempting to modify the monopole defects without first obtaining plaintiff's consent. Defendant filed an opposition and a cross-motion for summary judgment on July 16, 2004. Defendant contends that its notice to plaintiff was timely, and that it had no duty under the policies to notify plaintiff prior to June 2002, since there had been no occurrence. Further, defendant contends that the notice it gave to Loomis in 2001 qualifies as

notice to plaintiff, since Loomis was plaintiff's agent, and alternatively, defendant contends that it should be allowed to conduct discovery on that issue. Plaintiff filed papers in opposition to defendant's cross-motion on August 13, 2004. The only arguments therein directed to the SBA lawsuit are contained in pages 11–18 of plaintiff's brief [# 21]. In that regard, plaintiff contends that: 1) defendant has not properly pleaded a counterclaim concerning the SBA lawsuit; 2) defendant failed to give timely notice of the SBA lawsuit; and 3) defendant impaired plaintiff's subrogation rights by attempting to remedy the alleged defects in the monopoles sold to SBA without plaintiff's consent. However, as indicated above, these arguments were made only in opposition to defendant's cross-motion for summary judgment. Plaintiff did not itself move for summary judgment on the SBA claim.

After submission of papers, the parties requested that the Court adjourn oral argument on the pending summary judgment motion in order to allow them to discuss settlement, and the Court subsequently granted several adjournments for that purpose. On January 31, 2005, the parties settled all claims concerning the lawsuits by ATC and Sprint, but not those pertaining to SBA. As a result of this settlement, the only claim that remained in this action was defendant's counterclaim for a declaratory judgment that plaintiff is required to defendant and indemnify it in connection with the SBA lawsuit. As a result, the only motion that remained before the Court was defendant's cross-motion for summary judgment on the SBA claim. As to that claim, the Court heard oral argument on February 10, 2005.

---

1. During oral argument of the subject motions, counsel indicated that no discovery has taken place.

## DISCUSSION

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Plaintiff's papers raise three arguments in opposition to defendant's application for summary judgment: 1) defendant's counterclaim fails to set forth sufficient facts to state a claim against plaintiff concerning the SBA lawsuit; 2) defendant's notice to plaintiff regarding the SBA claim was untimely; and 3) defendant impaired plaintiff's subrogation rights. The first issue is easily resolved. Although plaintiff is essentially contending that defendant's counterclaim fails to state a claim for which relief can be granted, plaintiff did not move to dismiss under Federal Rule 12(b)(6). Since this is a motion under Rule 56, the Court may properly consider defendant's affidavits, etc., in addition to its answer and counterclaim, and having done so, finds that defendant has stated a claim against plaintiff for a declaratory judgment that plaintiff is required to defend and indemnify defendant in connection with the lawsuit by SBA. Moreover, the third issue need not be resolved here since as discussed below, the Court finds that there is a triable issue of fact on the second issue.

In considering whether defendant's notice to plaintiff was timely, the threshold question to be resolved is whether or not defendant's duty to give notice under the policy was triggered by defendant's knowledge of the design defect in the monopoles purchased by SBA. As discussed earlier, the policy required defendant to give notice as soon as practicable after: 1) "an occurrence"; 2) "an offense which may

result in a claim"; 3) "a claim is made"; or 4) a " 'suit' is brought." Plaintiff contends that defendant's discovery of the defect in SBA's monopoles constituted an "occurrence" or "an offense which may result in a claim," while defendant maintains that it had no duty to give notice until SBA actually made a claim for money.

The law of New York on this point is as follows: "The typical notice of occurrence provision requires that an insured notify its insurer of events that reasonably might give rise to liability covered by the policy." *AXA Marine and Aviation Ins. (UK) Ltd. v. Seajet Industries Inc.*, 84 F.3d 622, 625 (2d Cir.1996). Moreover,

> [u]nder New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy. An insured's failure to give timely notice to its insurer may be excused, however, by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability. *That is, a delay will be excused if the insured in good faith reasonably believes there is no policy coverage* or that the insured was not liable on the main action. The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim. Where the insured's excuse is not valid, the insurer need not demonstrate prejudice before it can assert the defense of noncompliance by the insured.

*Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir.1995) (emphasis added, citations omitted). In considering whether or not an insured reasonably believed that there was no policy coverage, "it is reasonable for an insured to rely on statements of an insurance broker." *Id.*

("Although the broker was apparently mistaken in his interpretation of the scope of the insurance contract, it was reasonable for the [insured] to rely on the statement and to believe that the policy did not cover any aspect of the rock-throwing incident."). Additionally, until such time as it is actually sued, an insured may reasonably believe that it will not be held liable, even where it is aware of the incident for which it is eventually sued. *Id.* ("[G]iven that the Union's officers are nonlawyers with little expertise in tort liability, we conclude that it was reasonable for them to believe that they could not be held liable for an intentional, and criminal, assault committed by a union member."). "It is generally held that questions as to whether there exists a good-faith belief that an injured party will not seek to hold the insured liable and whether the belief is reasonable under the circumstances are questions of fact reserved for the fact finder." *Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 13 A.D.3d 227, 787 N.Y.S.2d 22, 24 (1st Dep't 2004).

Defendant contends that it reasonably believed it did not have to notify plaintiff of the situation with SBA until 2002, when SBA demanded payment and commenced its lawsuit. In support of this argument, defendant notes that when it previously reported the same facts to Granite States, it was informed that such notice was premature, as there had been no demand for payment. In this regard, defendant contends that it had no reason to give similar notice to plaintiff, since plaintiff's policies and Granite State's policy were identical. A problem with this argument is that it is unsupported in the record. Although defendant's unsworn answer with counterclaim states that the policies are identical, Granite State's policy is not in the record, nor is there any evidentiary proof in admissible form that the policies are identical. Moreover, even if

such evidence was properly before the Court, there would nonetheless be an issue of fact as to the reasonableness of defendant's actions. In that regard, the Court notes that during oral argument, defendant's counsel was unable to identify any case with similar facts in which a court has held as a matter of law that an insured acted reasonably in believing that it did not need to give notice to its insurer. *See, Galaxy Ins. Co. v. 1454 Nicholas Ave. Assocs.*, 276 A.D.2d 424, 424–425, 715 N.Y.S.2d 27, 28 (1st Dep't 2000) (Reversing trial court's grant of summary judgment to insured, noting that "whether an insured's belief in non-liability is reasonable generally presents an issue to be resolved at trial. This case constitutes no exception, since it cannot be said, as a matter of law, that defendant insured reasonably believed that there was no risk of liability stemming from the assault upon which the underlying claim against it is premised, such assault having occurred upon defendant's property.") (citations omitted).

## CONCLUSION

Defendant's cross-motion for summary judgment [# 18] on its counterclaim is denied as follows: To the extent it pertains to the claim by ATC, it is denied as moot; to the extent it pertains to the claim by SBA, it is denied on the grounds that there is a triable issue of material fact precluding summary judgment. The case will proceed solely as to defendant's counterclaim concerning the lawsuit by SBA.

So ordered.