649 F.Supp.2d 78 (2009)
ATLANTIC CASUALTY INSURANCE COMPANY, Plaintiff,
v.
NORTHWAY POOL SERVICE, INC., Philip Siemann, Jacuzzi Spas International, and Patricia Casey, as Executrix of The Estate of Joseph P. Casey, Defendants.
No. 07CV4590(ADS)(ETB).
United States District Court, E.D. New York.
August 24, 2009.
*79 Milber Makris Plousadis & Seiden, LLP by Debra Miller Krebs, Esq., of Counsel, Woodbury, NY, for the Plaintiff.
Rubin & Licatesi, P.C. by Jason Stuart Firestein, Esq., of Counsel, Garden City, NY, for the Defendants Northway Pool Services, Inc. and Philip Siemann.
Wilson Elser Moskowitz Edelman & Dicker by Joseph Laird, Esq., of Counsel, New York, NY, for the Defendant Jacuzzi Spas International.
John J. Breen, Esq., Islandia, NY, for the Defendant Patricia Casey.

MEMORANDUM OF DECISION AND ORDER
SPATT, District Judge.
Presently before the Court is Atlantic's motion for summary judgment seeking (1) a declaration that it is not obligated to cover, defend, or indemnify any party in connection with the death of Joseph P. Casey, and (2) dismissal of the counterclaims asserted against it. For the reasons that follow, the plaintiff's motion is denied.

I. BACKGROUND
This case arises out of the tragic death of Joseph P. Casey, which occurred while he was relaxing in his Jacuzzi hot tub. The following facts are derived from the parties' submissions on the present motion.
The plaintiff, Atlantic Casualty Insurance Company ("Atlantic") issued an insurance policy to defendant Northway Pool Service, Inc., covering the period from February 1, 2006 to February 1, 2007. The defendant Philip Siemann is the sole owner of Northway.
In April of 2006, Siemann went to the residence of Patricia and Joseph Casey in response to a call concerning the Jacuzzi hot tub. Siemann determined that the Jacuzzi was in need of a new pump, ordered the proper equipment, and returned to the Casey residence later that month to install the pump. Mr. Casey died while in the hot tub on June 14, 2006.
On July 31, 2006, two police detectives, Detective Alfred Ciccotto and Detective Pasquale Alebergo, went to Siemann's home, notified him about Mr. Casey's *80 death, and asked him questions regarding the work he had performed on the hot tub. At his deposition, in response to questions by the attorney for Atlantic, Siemann summarized his conversation with the two police detectives as follows:
Q: Do you remember anything else that was specifically discussed during that conversation?
A: There were many questions about background of myself and Northway.
. . . .
A: ... [I]t was probably a 15-minute conversation. And thenin the first 10 or 12 minutes was basically about myself and Northway. At that point, they alluded to the fact that the sensors hadwere disconnected on the tub, and it appears that he had drowned in the hot tub.
Q: Did they tell you he drowned in the hot tub?
A: Atno. Not specifically. I don't remember if theyI think I had asked if it was an electrical problem oror if it was maybe health related. I don't really remember.
Q: Do you remember what they told you?
A: They said that they had found sensors were disconnected, and I told them that that was an impossibility because the tub shouldn't have ran with the sensors disconnected. At this point I'm thinking that this happened the day before.
Q: The day before what?
A: The day before the detectives were there.
Q: I'm sorry. What happened the day before the detectives were there?
A: The death of Mr. Casey. I was very nervous through the whole questioning. It was kind of surreal, like ayou see on TV.
Q: Was it your understanding at the end of the conversation with the detectives that Mr. Casey died in the hot tub?
A: Yes.
Q: Now, I just want to see if I'm understanding this correctly, and I'm not sure if I got a clarification before. Did you ask the police officers what the cause of death was?
A: No.
Q: Did you ask them anything toward determining what the cause of death was?
A: I think possibly it was, and they alluded to the fact that the sensors were disconnected on the hot tub.
. . . .
Q: Did you have any concerns that they might arrest you in connection with the questions that they had?
A: No. It didn't seem accusatory to me. It just seemed that they were asking questions.
(Siemann Dep. 22:18-24:20, 27:3-8). Siemann testified when the police detectives left his home, he was under the impression that they would not return. However, they told him that if he had anything to add, he should contact them. (Siemann Dep. 32:9-13).
Siemann did not report Mr. Casey's death to Atlantic at that time. In August of 2007, Siemann was served with a summons and complaint in a civil action entitled Patricia Casey, as Executrix of the Estate of Joseph P. Casey against Northway Pool Service, Inc., Philip Siemann and Jacuzzi Spas International. On August 6, 2007, Atlantic was notified of the death of Mr. Casey as well as the lawsuit filed against Northway and Siemann. On August 27, 2007, Atlantic disclaimed coverage to Northway in connection with the death of *81 Mr. Casey for its alleged failure to provide timely notice of the occurrence.
The policy issued to Northway provided that the insured must "see to it that [Atlantic] is notified as soon as practicable of an `occurrence' or an offense which may result in a claim." (Pls. Exh. A, Section IV(2)(a)). Atlantic moves for summary judgment seeking: (1) a declaration that it is not obligated to cover, defend, or indemnify any party in connection with Mr. Casey's death, and (2) dismissal of the counterclaims asserted against it.

II. DISCUSSION

A. The Summary Judgment Standard
Summary judgment is proper only where no genuine issue of material fact exists to present to the trier of fact. Rule 56 of the Federal Rules of Civil Procedure states:
The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(c).
As stated by the Rule, a motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has offered evidence that no genuine issue of material fact remains, the burden shifts to the non-moving party to provide evidence that a genuine, triable issue remains. Id. at 250, 106 S.Ct. 2505. It is well-settled that the non-moving party cannot defeat summary judgment with nothing more than unsupported assertions or the allegations in its pleadings. Fed.R.Civ.P. 56(e); Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir.1996); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (citations omitted).
Still, in deciding a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202; Vann v. City of N.Y., 72 F.3d 1040, 1048-49 (2d Cir.1995). Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issuefinding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs. Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994); see Donahue v. Windsor Locks Board of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

B. As to the Notice Requirement
The plaintiff contends that because Northway did not provide notice of the occurrence until more than one year after first learning of Mr. Casey's death, it failed to satisfy contractual conditions *82 precedent to coverage as a matter of law. Further, Atlantic contends that Northway has not supplied a meritorious excuse for its failure to timely notify Atlantic of the occurrence. Accordingly, Atlantic seeks a declaration that it is not obligated to cover or defend Northway in any action concerning Mr. Casey's death.
"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir.1995). "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim." Id. at 143. "An insured's failure to give timely notice to its insurer may be excused, however, by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability." Id.
In examining whether the insured's delay should be excused, courts have adopted a two part inquiry. With respect to whether the insured lacked knowledge of the occurrence, "the court examines the facts known to the insured during the relevant period and whether such facts would have alerted a reasonable person that there had been an occurrence or prompted a reasonable person to inquire as to whether there had been an occurrence." U.S. Underwriters Ins. Co. v. Tauber, 604 F.Supp.2d 521, 528 (E.D.N.Y.2009); Kaesong Corp. v. United Nat'l Specialty Ins. Co., No. 07CV2897, 2008 WL 1902684, at *2 (E.D.N.Y. April 25, 2008) ("[W]here a `reasonable person could envision liability, that person has a duty to make some inquiry.'") (quoting White v. City of New York, 81 N.Y.2d 955, 958, 615 N.E.2d 216, 598 N.Y.S.2d 759 (1993)).
"With respect to the second prong, a delay will be excused if the insured, in good faith, believed that the occurrence could not lead to liability that is covered under the policy." Id. "The reasonableness of the belief does not turn on `whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him.'" Kaesong Corp., 2008 WL 1902684 at *3 (quoting SSBSS Realty Corp. v. Pub. Serv. Mutual Ins. Co., 253 A.D.2d 583, 584, 677 N.Y.S.2d 136 (1st Dep't 1998)).
Whether delay in notification was reasonable is generally a question of fact to be determined at the trial. See U.S. Underwriter's Ins. Co. v. Ziering, No. 06CV1130, 2009 WL 238562, at *6 (E.D.N.Y. Feb. 2, 2009); Tauber, 604 F.Supp.2d at 528 ("The issue of whether a delay is objectively reasonable is generally reserved for the fact finder at trial.") (citing Argentina v. Otsego Mut. Fire Ins. Co., 86 N.Y.2d 748, 631 N.Y.S.2d 125, 655 N.E.2d 166, 167 (1995)). "Thus, whether notice was provided in a reasonable amount of time may only be decided as a matter of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." Ziering, 2009 WL 238562, at *6 (internal quotations and citations omitted).
Here, Siemann was indisputably aware of Mr. Casey's death, but did not notify Atlantic until more than a year after he was visited by the police. Such delay is legally untimely unless Siemann can provide a reasonable excuse. See Ziering, 2009 WL 238562, at *6 (collecting cases finding notice untimely after as few as ten days). Siemann contends that he held a reasonable belief that his work on the hot tub pump was unrelated to the malfunction *83 of sensors some three months later and that he did not believe any claim would result. In light of all of the circumstances known to Siemann at the time, the Court cannot find that Siemann's belief was unreasonable as a matter of law.
In E.T. Nutrition v. Central Mut. Ins. Co., 201 A.D.2d 451, 607 N.Y.S.2d 392 (2d Dep't 1994), the court held that whether a store owner's eleven month delay in notifying insurance carrier of potential product tampering after being visited by police was a question of fact. The court explained that police investigator took samples of the product for laboratory testing and told the insured that she would be notified if the product was found to be contaminated. Id. at 452, 607 N.Y.S.2d 392.
In U.S. Underwriters Ins. Co. v. Carson, 49 A.D.3d 1061, 853 N.Y.S.2d 700 (3d Dep't 2008), the insured was a bar owner, whose employee had served alcoholic beverages to a party involved in a fatal car accident after leaving the establishment. The following day, the employee notified the insured about the accident and informed him that she was interviewed by police. Id. at 1062, 853 N.Y.S.2d 700. The insured did not notify his insurance agent of the incident until he received notice of a potential legal claim from an attorney nearly ten months later. Id., 853 N.Y.S.2d 700. The Court found that the reasonableness of the insured's actions in waiting to notify his insurer was a question of fact for the trial where the insured was not provided with any details concerning the accident or if alcohol was involved, when the patron left the bar he did not appear drunk and appeared to be on foot, and the insured heard nothing more about the accident until receiving the attorney's letter. Id. at 1063, 853 N.Y.S.2d 700.
Here, when the police visited Siemann, although they indicated that Mr. Casey died while in his hot tub. they further stated that certain sensors had been found disconnected. Northway's work for the Caseys had been limited to replacement of the pump, which did not involve any manipulation of the sensors. Siemann told the officers that he did not touch the sensors and something must have happened to the circuit board for the tub to run without the sensors connected. (Ciccotto Dep. 21:18-22:19). Further, the police did not express any belief that Siemann's work caused the malfunction. (Ciccotto Dep. 21:18-22:1). Finally, the Caseys had not contacted Siemann or notified him of any problem with the tub after completion of his work on the pump in April and following the police visit, he heard nothing more about the incident until receiving the summons and complaint in the state court action.
Accordingly, Atlantic's motion for summary judgment is denied.

C. As to the Opposition by the Estate of Joseph Casey
In opposition to the plaintiff's motion for summary judgment, Patricia Casey, as executrix of the estate of Joseph Casey, largely joined the arguments presented by Northway and Siemann. However, Casey also contends that she has been improperly joined in this action because she is not a party to the insurance contract and, at this time, has no legally cognizable interest in the insurance contract. Therefore, according to Casey, there is no justiciable controversy between the Estate and Atlantic and the Estate is not a proper defendant in this case.
However, at this time, based on the facts presented, the Court reserves decision on the issue of whether the estate is a proper party in this action.

III. CONCLUSION
For the foregoing reasons, it is hereby:
*84 ORDERED, that the plaintiffs motion for summary judgment is denied, and it is further
ORDERED, that the parties are directed to appear for a pre-trial conference and to set jury selection in this matter on Tuesday, September 8, 2009 at 9 a.m. in courtroom 1020.
SO ORDERED.